**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0203n.06
Filed: April 17, 2008

**No. 07-1366**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| v. | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| ALEXIS L'PRAE BASS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before: KEITH, DAUGHTREY, and GIBBONS, Circuit Judges.

PER CURIAM. In this sentencing appeal, defendant Alexis Bass contends that the district court erred in finding that he was a career offender under U.S.S.G. § 4B1.1(a) because his prior offenses do not qualify as crimes of violence under U.S.S.G. § 4B1.2(a). In determining Bass's recidivist status, the district court considered his prior state convictions for delivery of less than 50 grams of cocaine, for "fleeing and eluding a police officer, and for "assaulting/resisting/obstructing a police officer." The defendant now insists that the latter two offenses are not categorically crimes of violence, as required under *Taylor v. United States*, 495 U.S. 575 (1990), in order to qualify under Section 4B1.2(a), and that they cannot be qualified as such under *Shepard v. United States*, 544 U.S. 13 (2005), because the underlying facts reflected in the presentence report were taken from

police incident reports and not from *Shepard*-eligible "charging documents."  In response, the government points to the Supreme Court's recent ruminations in *James v. United States*, ___ U.S. ___, 127 S.Ct. 1586 (2007), to bolster its argument that, under the applicable Michigan statutes, both the resisting-and-obstructing offense and the fleeing-and-eluding offense qualify categorically as crimes of violence.  Because we need find that only one of these two offenses qualifies for purposes of Section 4B1.1, and because we conclude that Bass's conviction for "assaulting/resisting/obstructing a police officer" meets the *James* test under the factual circumstances of this case, we affirm the district court's judgment, including the court's subsequent order reducing the defendant's 226-month sentence to 172 months.

Under the Sentencing Guidelines, "career offenders" are subject to mandatory increases in their offense levels, and their criminal history category is set at Category VI. *See* U.S.S.G. § 4B1.1(b).  A defendant will be designated as a career offender if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction;
>
> (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and
>
> (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).

The Sentencing Guidelines define a "crime of violence" as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a).

The commentary to Section 4B1.2 provides that "murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling" qualify as crimes of violence. U.S.S.G. § 4B1.2 cmt n.1. Beyond these enumerated crimes, subsection (1) demarcates certain crimes as violent because they have the actual, attempted, or threatened use of physical force as an element. In addition, subsection (2) adds specific offenses but indicates clearly that the list is not exclusive by extending the category to include any criminal offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another" – a provision that we have referred to as the "otherwise clause." *See United States v. Collier*, 493 F.3d 731, 733 n.3 (6th Cir. 2007).

Precisely what felony offenses qualify as crimes of violence under these two tests has been the topic of much litigation under the Sentencing Guidelines. In *Taylor*, the Supreme Court concluded that a court "must take a categorical approach and first consider the statutory definition of the offense." *United States v. Foreman*, 436 F.3d 638, 641 (6th

Cir. 2006) (interpreting *Taylor*, 495 U.S. 575). The categorical approach generally requires the sentencing court to "confine its inquiry to the 'statutory definitions of the prior offenses,' but it may also look to 'the charging paper and jury instructions.' The court should not, however, look 'to the particular facts underlying [the defendant's prior] convictions.'" *Collier*, 493 F.3d at 733 (internal citations omitted) (quoting *Taylor*, 495 U.S. at 600, 602).

Where initial examination of the statutory language fails to clarify whether a particular offense is a crime of violence, the court may then consider "'the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented' in determining whether the crime was a crime of violence." *Foreman*, 436 F.3d at 641 (quoting *Shepard*, 544 U.S. at 16). Although *Taylor* and *Shepard* focus on the definition of "a violent felony under the Armed Career Criminal Act, the application of these rules to the definition of 'crime of violence' under the Sentencing Guidelines has become an accepted practice in this Circuit." *Id.*

The first conviction that the district court characterized as a crime of violence is shown on the defendant's record as a charge of "fleeing and eluding police officer." We have had previous occasions on which to review the Michigan statute prohibiting "fleeing and eluding," which provides:

> (1) A driver of a motor vehicle who is given by hand, voice, emergency light, or siren a visual or audible signal by a police or conservation officer, acting in the lawful performance of his or her duty, directing the driver to bring his

or her motor vehicle to a stop shall not willfully fail to obey that direction by increasing the speed of the vehicle, extinguishing the lights of the vehicle, or otherwise attempting to flee or elude the police or conservation officer. This subsection does not apply unless the police or conservation officer giving the signal is in uniform and the officer's vehicle is identified as an official police or department of natural resources vehicle.

(2) Except as provided in subsection (3), (4), or (5), an individual who violates subsection (1) is guilty of fourth-degree fleeing and eluding, a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.

(3) Except as provided in subsection (4) or (5), an individual who violates subsection (1) is guilty of third-degree fleeing and eluding, a felony punishable by imprisonment for not more than 5 years or a fine of not more than $5,000.00, or both, if 1 or more of the following circumstances apply:

(a) The violation results in a collision or accident.

(b) A portion of the violation occurred in an area where the speed limit is 35 miles an hour or less, whether that speed limit is posted or imposed as a matter of law.

(c) The individual has a prior conviction for fourth-degree fleeing and eluding, attempted fourth-degree fleeing and eluding, or fleeing and eluding under a current or former law of this state prohibiting substantially similar conduct.

Mich. Comp. Laws § 750.479a.

Reviewing a conviction under this Michigan statute, we have observed that "[b]ecause neither [Section 4B1.2(a)] nor its application note names fleeing and eluding as a crime of violence, that offense must either (1) have 'as an element the use, attempted use, or threatened use of physical force against the person of another' or (2) 'present[ ] a serious potential risk of physical injury to another' to qualify" under the guidelines. *United States v. Martin*, 378 F.3d 578, 581 (6th Cir. 2004). Because flight "creates a conspicuous potential risk of injury to pedestrians, vehicles sharing the road, passengers in the fleeing

car and the pursuing officer" and eventual apprehension "provokes an inevitable, escalated confrontation with the officer," we concluded in *Martin* that the offense poses real risks of harm. *Id.* at 582. But, significantly, Martin was convicted pursuant to subsections (a) and (b), which increase liability where flight either causes a collision or accident or involves flight in a 35-mile-per-hour zone, leading us to conclude that Martin's actions did in fact cause "palpable risk of physical injury to others." *Id.* Thus, with regard to third-degree fleeing and eluding, we held that "[b]ecause fleeing and eluding an officer while in a car generally will present serious *potential* risks of physical injury to third parties – the only relevant inquiry – it necessarily qualifies as a 'crime of violence' under the Guidelines." *Id.* at 583.

In so holding, we observed that "the Michigan fleeing-and-eluding statute may be violated by conduct that is passive, non-violent, and non-threatening" but also concluded that this fact "does not demand a different conclusion" because the guidelines do not require actual injury or violence to have occurred in order to make an offense a crime of violence. *Id.* (internal citation and quotation marks omitted). Acknowledging that the sentencing court was obligated to "look at the conduct charged in the indictment when the statutory offense potentially covers violent and non-violent crimes," we concluded that it made no "difference that Martin could have violated the statute by committing a prior violation of fourth-degree fleeing and eluding" because he had been convicted for flight causing an accident or in a 35-mile-per-hour-zone, or both. *Id.* at 584, 583. We therefore held that the offenses defined in subsections (a) or (b) were categorically crimes of

violence but that a conviction pursuant to subsection (c) would require examination of the actual charged conduct. *See id.* at 584.

In *Foreman*, we confirmed the holding in *Martin* that the offense of third-degree fleeing and eluding under either subsection (a) or (b) of the Michigan statute was categorically a crime of violence, because it involved a "serious potential risk of physical injury." *See* 436 F.3d at 641-43. But, there, we also recognized that "the categorical approach is not determinative of whether fourth-degree fleeing and eluding is a crime of violence." *Id.* at 643. Fourth-degree fleeing and eluding, we concluded, posed the same *potential* risk of violence that "[n]early any criminal offense" would entail, *id.*, but because it did not involve the components set out in subsections (a) and (b), the potential was not, on its face, sufficiently *serious* to make the offense in MCL § 750.479a(3)(c) a categorical crime of violence under the federal guidelines. Because the district court found to the contrary, we remanded Foreman's case for reassessment under *Shepard*, *i.e.*, an examination of the "'charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented'" for facts that would establish his conviction as one for a crime of violence. *Foreman*, 436 F.3d at 643 (quoting *Shepard*, 544 U.S. at 16).

In claiming in this case that "neither third degree nor fourth degree fleeing and eluding is a categorical 'crime of violence,'" the defendant has clearly misread the binding precedent in this circuit. Contrary to Bass's assertion, our decision in *Martin* makes third-

degree fleeing-and-eluding convictions pursuant to subsections (a) and (b) categorically crimes of violence, based on statutory language. Only where a conviction is based on subsection (c) must the sentencing court look beyond the statute to permissible sources to determine whether the past conviction was for a crime of violence. *See Martin*, 378 F.3d at 583; *see also Foreman*, 436 F.3d at 642. Here, however, the record does not indicate which subsection formed the basis for the defendant's conviction for third-degree fleeing and eluding, leaving the possibility that his conviction could have arisen under subsection (c). Moreover, the only underlying documentation in the record, although it reports facts that tend to reflect commission of a crime of violence under *Martin*,[1] is the presentence report's summary of facts taken from the police incident report, which is not a qualifying document under *Shepard*. Thus, in order to predicate the defendant's status as a career offender on his conviction for fleeing and eluding, the district court would have to rely on *Shepard*-qualified documentation either of a prior conviction under subsections (a) or (b), or of one that otherwise involved a "*serious* potential risk of physical injury to another." *Foreman*, 436 F.3d at 643 (emphasis in original).

We reach a different conclusion with regard to the second prior conviction considered by the district court in sentencing Bass as career criminal, listed as

---

[1]The summary in the presentence report, based on a police incident report, indicates that "officers observed Mr. Bass to be the driver and sole occupant of a vehicle speeding at around 65 miles per hour in an area posted for speeds not to exceed 45 miles per hour. The officers activated their overhead lights and siren and Mr. Bass accelerated the vehicle and fled . . . at speeds exceeding 70 miles per hour." He was eventually apprehended after abandoning the vehicle and fleeing on foot.

"assaulting/resisting/obstructing a police officer." The defendant challenges this conviction on much the same basis as the fleeing-and-eluding offense, contending that the applicable Michigan statute under which he was convicted prohibits non-violent as well as violent conduct and, therefore, that violation of the statute cannot, without more, categorically constitute a crime of violence under *Taylor*. The defendant also points out that, as with his "fleeing and eluding" conviction, the factual summary in the presentence report is taken from a police-incident report, which, as we have already noted, does not qualify under *Shepard*.

The statute in question, MCL § 750.479 ("Assaulting, battering, obstructing, or endangering an officer performing his or her duties"), provides as follows:

> (1) A person shall not knowingly and willfully do any of the following:
>
> (a) Assault, batter, wound, obstruct, or endanger a medical examiner, township treasurer, judge, magistrate, probation officer, parole officer, prosecutor, city attorney, court employee, court officer, or other officer or duly authorized person serving or attempting to serve or execute any process, rule, or order made or issued by lawful authority or otherwise acting in the performance of his or her duties.
>
> (b) Assault, batter, wound, obstruct, or endanger an officer enforcing an ordinance, law, rule, order, or resolution of the common council of a city board of trustees, the common council or village council of an incorporated village, or a township board of a township.
>
> (2) Except as provided in subsections (3), (4), and (5), a person who violates this section is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.
>
> * * * * *
>
> (8) As used in this section:

(a) "Obstruct" includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command.

Mich. Comp. Laws § 750.479.

Because this offense is not listed in Section 4B1.1 or the commentary to the guidelines as a crime of violence, we first look to the analysis in *Taylor* in order to determine whether an offense charged under MCL § 750.479 categorically qualifies as a crime of violence, an issue of first impression for this court. *See United States v. Herrera*, 375 F.3d 399, 407 (6th Cir. 2004) (declining to determine whether section 750.479(a) qualifies as a crime of violence). The defendant argues that because the statute prohibits mere "failure to comply with a lawful command," presumably including passive non-compliance, it does not proscribe crimes of violence as a *categorical* matter. In the absence of an element of actual, attempted, or threatened use of force against another person, the defendant contends, a prior conviction under MCL § 750.479 fails to meet the *Taylor* categorical test. The defendant likewise insists that because conviction under this statute is conceivably possible in the absence of an act of violence, commission of what he refers to as "resisting or obstructing" does not necessarily entail a "*serious* potential risk of physical injury," as required by U.S.S.G. § 4B1.2(a)(2), and fails to qualify for the same reason that a prior conviction for "fleeing and eluding" under MCL § 750.479a was held insufficient in *Foreman*.

- 10 -

But this argument cannot succeed for several reasons. First, we have held that "neither actual violence nor an imminent threat of violence must occur before an offense can qualify" as a crime of violence under U.S.S.G. § 4B1.2(a)(2). *United States v. Payne*, 163 F.3d 371, 375 (6th Cir. 1998). Hence, larceny from the person qualifies as a crime of violence, even if committed surreptitiously, because such acts are "clearly the type of situation that could result in violence" where "the risk of ensuing struggle is omnipresent." *Id.* (internal quotation marks and citation omitted).

Second, the Supreme Court in *James* has warned against "requiring that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony." 127 S.Ct. at 1597. Instead, *James* instructs us, "the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *Id.* Thus, in holding that attempted burglary under Florida's interpretation of its burglary statute constitutes a crime of violence, the Supreme Court said that "[a]s long as an offense is of a type that, by its nature, presents a serious potential risk of injury to another, it satisfies the requirements of [section 4B1.2(a)'s] residual provision." *Id.* Without doubt, the *James* court would be equally dismissive of the argument presented in this case, *i.e.*, that because the act of declining to provide documents to a city attorney could *theoretically* qualify as "obstruction" under MCL § 750.479a, a prior conviction under the statute cannot qualify categorically as a crime of violence.

This conclusion becomes obviously correct when we look to the actual conviction at issue here, which was for "assaulting/resisting/obstructing a police officer." It is abundantly clear from the charge itself, specifically from the use of the term "assault," that the prior conviction was for a crime of violence, either because it was "an[ ] offense . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. § 4B1.2(a)(1), or because, at the very least, it "involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). We therefore hold that the district court did not err in finding that the defendant had two prior felony convictions for crimes of violence under section 4B1.1(a)(3) and was subject to sentencing as a career offender under section 4B1.1(b).

In this case, the defendant's request for a remand appears particularly futile not simply on the basis of our determination that he was properly designated as a career offender based on the existence of two prior qualifying convictions for drug-trafficking and "assaulting/resisting/obstructing a police officer," but also because at least three of his 17 other prior convictions listed in the presentence report might also qualify as crimes of violence upon closer investigation. They include a 1985 burglary conviction, a 1991 conviction for aggravated assault, and a 1993 conviction for carrying a concealed weapon. The flaw in the report is that information regarding most of the defendant's prior convictions was gleaned primarily from police incident reports, rather than *Shepard*-qualified documents.

For the reasons set out above, we AFFIRM the district court's judgment, including the order sentencing the defendant as a career offender.